**PRINCE v. COMMISSIONER OF IMMIGRATION AND NATURALIZATION et al.**

**No. 11114.**

United States Court of Appeals
Sixth Circuit.

Nov. 17, 1950.

Henry C. Lavine, Cleveland, Ohio (Henry C. Lavine, Cleveland, Ohio, on the brief), for appellant.

Wm. C. Graves, Cleveland, Ohio (Don C. Miller, Cleveland, Ohio, on the brief), for appellees.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant, an alien, born in Italy, was, at the age of two, brought to the United States by his grandmother forty-eight years ago, and has continuously resided in this country since that time. He is married to a native American citizen and has a daughter sixteen years old. Twenty-nine years ago, he was convicted of a bank robbery and sentenced to a term of twenty years in prison, of which he served eight years, and was thereafter paroled, more than twenty years ago. He has been discharged from parole many years.

In 1941, deportation proceedings were brought against him in Cleveland, Ohio, under Title 8 U.S.C.A. § 155, in which he was charged with having, in 1934, left the United States at Niagara Falls and entered Canada with his wife at a place called Crystal Beach, a nearby resort, where, it was charged, he had remained approximately an hour and a half, and then recrossed to the United States. It was claimed that appellant's re-entry into the United States was illegal because he had not been in possession of an immigration visa and, not being exempt from the quota, had committed an offense involving moral

---

turpitude, namely, the robbery of 1921, prior to his entry—that is, his re-entry—from Canada. It appears that the government learned of such claimed re-entry from Canada through the admission of appellant himself, who stated, during the course of his examination in 1942, that, as mentioned above, he had visited Crystal Beach in Canada with his wife for an hour or so in 1934. In subsequent proceedings, however, appellant stated to the immigration officials that he had been mistaken about leaving Niagara Falls and entering Canada, and that, instead, he had passed over a bridge from Niagara Falls to Goat Island, a part of the United States, and had returned from that place after a visit of an hour or so in company with his wife; that he had told his wife of his testimony about going to Canada, whereupon she informed him that he had never been at Crystal Beach but had been at Goat Island instead. Appellant's wife later testified in the deportation proceedings to the same effect.

The Commissioner of Immigration, however, recommended deportation on the ground that appellant had admitted that he had been in Canada, and that his re-entry, after having been previously convicted of a crime involving moral turpitude, called for his deportation. Upon the approval of the Commissioner's recommendation of deportation by the Board of Immigration Appeals, a warrant and order of deportation was finally issued by the Attorney General on October 7, 1947, in accordance with the provisions of the Immigration Act of 1917. Title 8 U.S.C.A. § 155.[1] Thereupon, appellant filed a petition in the district court to review the action of the Commissioner and the Attorney General under the provisions of the Administrative Procedure Act, Title 5 U.S.C.A. § 1001, et seq.[2]

---

1. Section 19(a), Immigration Act of 1917, 8 U.S.C.A. § 155 (a), as amended, provides, in part, as follows: " * * * any alien (ground of deportation omitted) shall, upon the warrant of the Attorney General, be taken into custody and deported. * * * In every case where any person is ordered deported from the United States under the provisions of this chapter, or of any law or treaty, the decision of the Attorney General shall be final."

2. Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, provides:

"*Judicial review of agency action*

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.

"*Rights of review.* (a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.

"*Form and venue of proceedings.* (b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law.

"*Acts reviewable* (c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final shall be final for the purposes of this subsection whether or not there has been presented or determined any application for a declaratory order, for any form of reconsideration, or (unless the agency otherwise requires by rule and provides that the action meanwhile shall be inoperative) for an appeal to superior agency authority.

"*Relief pending review* (d) Pending judicial review any agency is authorized, where it finds that justice so requires, to postpone the effective date of any action taken by it. Upon such conditions as may be required and to the extent necessary to prevent irreparable injury, every reviewing court (including every court to which a case may be taken on appeal from or upon application for certiorari or other writ to a reviewing court) is authorized to issue all necessary and ap-

580

On the hearing of the petition, the district court held that under the Immigration Act, the decision of the Attorney General was final; that the Administrative Procedure Act was not applicable in that it did not authorize judicial review of such proceedings; and that such a review could only be had by a petition for a writ of habeas corpus. The court, accordingly, dismissed appellant's petition. 87 F.Supp. 53.

We are of the opinion that a person against whom a deportation order has been issued is entitled to judicial review after the issuance of such an order. In Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 454, a petitioner sought release from custody by habeas corpus proceedings upon the ground that the administrative hearing was not conducted in conformity with Sections 5 and 11 of the Administrative Procedure Act. The Supreme Court stated that the single ultimate question was whether administrative procedure in deportation cases must conform to the requirement of the Administrative Procedure Act, and held that "the Administrative Procedure Act, § 5, does cover deportation proceedings conducted by the Immigration Service." While the only question the court decided was that the hearings in the Wong case should have been held before an examiner, pursuant to provisions of the Administrative Procedure Act, rather than before an immigration inspector, appellant argues that the holding tends to sustain the decisions of other circuits on the point here involved. In

United States ex rel. Trinler v. Carusi, 3 Cir., 166 F.2d 457, 462, it was held that the Administrative Procedure Act "did enlarge the rights of people against whom deportation orders have been issued and that they are now entitled to judicial review after the issuing of a deportation order. That being so, a document headed 'Petition for Review' is an appropriate enough form in which to ask for the relief."

In Kristensen v. McGrath, 86 U.S.App. D.C. 48, 179 F.2d 796, 800 (certiorari granted, May 15, 1950), the court stated that, with reference to the question here involved, its conclusions were the same as those reached in the Trinler case, and held that "the Administrative Procedure Act's judicial review section was not intended to perpetuate preexisting rigidities in the use of extraordinary legal remedies but rather to simplify and make more flexible the avenues to judicial relief." See also Yanish et al. v. Barber, 9 Cir., 181 F.2d 492.

In the instant case, the district court held that judicial review, under the Administrative Procedure Act, was precluded by that portion of the statute which specifically excepted from such review those cases where "agency action is by law committed to agency discretion." Title 5 U.S.C.A. § 1009.

In Kristensen v. McGrath, supra, it was observed that this statutory exception from judicial review was not satisfied in the case then under consideration; that the immigration statute did not, on its face, preclude judicial review, but merely stated that the

propriate process to postpone the effective date of any agency action or to preserve status or rights pending conclusion of the review proceedings.

"*Scope of review* (e) So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error."

decision of the Attorney General should be final; that such a statutory declaration of finality, which did not preclude review by way of habeas corpus, did not qualify as a bar to review under the statute. The court went on to say that from the history of the statute, it appeared that the legislative discussion of the exception, agency action "committed to agency discretion," revealed no intention to bar judicial review, inasmuch as it was made clear to Congress that questions of law were not withdrawn from review; and since there was no doubt that, if appellant had been in custody, habeas corpus would lie to examine into the fairness of the proceedings and their conformity with the governing statutes, it resulted that there was no completely unreviewable discretion vested in the Attorney General, within the meaning of the exception. We concur in this view.

Moreover, the statute provides for judicial review of "every final agency action for which there is no other adequate remedy in any court". Title 5 U.S.C.A. § 1009(c). As said in the Kristensen case, it appears that Congress did not intend to perpetuate extraordinary legal remedies, requiring persons to submit to arrest in order to file a petition for a writ of habeas corpus in deportation proceedings—certainly an inadequate remedy—but, rather, to give them the adequate remedy of judicial review of such agency action. It follows that under the provisions of the Administrative Procedure Act, appellant was entitled to a judicial review by the district court of the order of deportation.

In his petition in the district court, appellant, a resident of Cleveland, where the deportation proceedings took place, named as defendant, Floyd E. Ault, Officer in charge of the Cleveland office of the Immigration and Naturalization Service, and asked for an injunction restraining defendant from deporting him. Defendant, in his answer, set forth that the action was brought to review an order of the Commissioner of Immigration and Naturalization, and that the official residence of such official was

Washington, D. C.; that the Attorney General was an indispensable party to the adjudication of the controversy, and could not be made a party without depriving the district court of its jurisdiction, as the official residence of the Attorney General was Washington, D. C.; and the answer concluded with a prayer that the petition should be dismissed. The district court did not pass on any of these matters and arguments concerning them were not presented. The sole question decided by the district court, and the only point discussed by it in its opinion was that the Administrative Procedure Act did not authorize judicial review of deportation proceedings. We, therefore, at this point, express no opinion on the merits of petitioner's case, nor any view upon the legal questions involved in appellee's motion to dismiss, addressed to the district court. In Brooks v. Dewar et al., 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399, the court remarked that questions similar to the one raised in respondent's motion to dismiss, as to whether public officials were indispensable parties in certain cases, have rarely been free from difficulty, and that it is not an easy matter to reconcile all of the decisions of the Supreme Court in this class of cases. For adjudications holding such officials to be such indispensable parties, see Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Gnerich et al. v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068; Podovinnikoff v. Miller, 3 Cir., 179 F.2d 937; National Conference on Legalizing Lotteries v. Goldman, 2 Cir., 85 F.2d 66. For cases holding such officials not to be indispensable parties, see State of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; Jarvis v. Shackelton Inhaler Co., 6 Cir., 136 F.2d 116; Rood v. Goodman, 5 Cir., 83 F.2d 28; Ryan et al. v. Amazon Petroleum Corp., 5 Cir., 71 F.2d 1; Yarnell et al. v. Hillsborough Packing Co., 5 Cir., 70 F.2d 435. In Brooks v. Dewar, supra, the Supreme Court expressly abstained from discussion of the question, placing its determination on other grounds. However, in resolving a conflict between the circuits,[3]

3. National Conference of Legalizing Lotteries v. Goldman, 2 Cir., 85 F.2d 66, in accord with the decision reversed, and

contra: Jarvis v. Shackelton Inhaler Co., 6 Cir., 136 F.2d 116.

582

in Williams et al. v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, the Supreme Court held that where the Postmaster General had issued a postal fraud order, those against whom it was issued could sue the local postmaster to enjoin him from carrying out such order, and that the Postmaster General was not an indispensable party to the suit. In its decision, the court laid down the rule in such cases: The superior officer is an indispensable party if a decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him, or by having a subordinate exercise it for him; he is not an indispensable party if the decree which is entered would effectively grant the relief desired by expending itself on the subordinate official who is before the court. Since the question of indispensable parties was not presented or argued to the district court, nor there decided, it is our conclusion that its determination should be had in that court before decision of the question on appeal.

In accordance with the foregoing, the judgment is reversed and the case remanded to the district court for further proceedings.